# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

KRISTIN M.A.,[1]

Plaintiff,

v.

MARTIN O'MALLEY,[2] Commissioner of
Social Security,

Defendant.

Case No. 3:23-cv-00064-JMK

## DECISION AND ORDER

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit.

On or about July 26, 2019, Kristin M.A. ("Plaintiff") protectively filed an application under Title II of the Social Security Act,[3] with an alleged onset date of January 17, 2017.[4] Plaintiff has exhausted her administrative remedies and filed a Complaint seeking relief from this Court.[5] Plaintiff's Opening Brief asks the Court to reverse and remand the agency's decision for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).[6] The Commissioner filed the Administrative Record and a Response Brief.[7] Plaintiff filed a Reply Brief.[8]

Oral argument was not requested and was not necessary to the Court's decision. This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of

---

[3] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought claims under Title II only. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

[4] Administrative Record ("A.R.") 15, 382. The application summary, not the application itself, appears in the Court's record and is dated September 20, 2019. A.R. 382. Pursuant to 20 C.F.R. §§ 416.340–350, a protective filing date establishes the earliest possible application date based on a claimant's oral inquiry about eligibility or a verbal or written statement of intent to file for benefits. Therefore, July 26, 2019, is considered Plaintiff's application filing date. A.R. 15.

[5] Docket 1 (Plaintiff's Compl.).

[6] Docket 13 (Plaintiff's Br.).

[7] Docket 8, 9, 10 (Notice of Lodging Admin. Record); Docket 15 (Commissioner's Br.). As of December 1, 2022, the Commissioner's "answer may be limited to a certified copy of the administrative record." *See* Fed. R. Civ. P., Supp. R. 4(b) of Soc. Sec. Actions under 42 U.S.C. § 405(g) (effective Dec. 1, 2022).

[8] Docket 16 (Reply).

Social Security.[9]  For the reasons discussed below, Plaintiff's request for relief at Docket 13 is DENIED.

## I.  STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[10] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11]  Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[12]  In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[13]  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[14]  A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [s]he did not rely."[15]  An ALJ's

---

[9] 42 U.S.C. § 405(g).

[10] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[11] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[12] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[13] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[14] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[15] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[16]   Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[17]   In particular, the Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests.[18]   However, this duty exists "even when the claimant is represented by counsel."[19]

## II.   DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance benefits ("DIB") to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[20]   In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[21]   Disability is defined in the Act as follows:

---

[16] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[17] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)), *superseded on other grounds by* 20 C.F.R. § 416.929(c)(3) and § 404.1529(c)(3); *see also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

[18] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

[19] *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) (quoting *Brown,* 713 F.2d at 443).

[20] 42 U.S.C. § 423(a).

[21] 42 U.S.C. § 1381a.

Case No. 3:23-cv-00064-JMK, *Kristin M.A. v. Kijakazi*
Decision and Order
Page 4 of 24

[I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[22]

The Act further provides:

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[23]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[24] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[25] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[26] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[27] The steps, and the ALJ's findings in this case, are as follows:

---

[22] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[23] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[24] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[25] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[26] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[27] *Tackett*, 180 F.3d at 1101.

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity" ("SGA").[28] *The ALJ determined that Plaintiff had not engaged in SGA from January 17, 2017, the alleged onset date, through her date last insured of December 31, 2018 (the "insured period").[29]*

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[30] *The ALJ determined that Plaintiff had the following severe impairments: cervical degenerative disc disease and osteoarthritis, status post cervical fusion. The ALJ found that Plaintiff's bilateral hand tingling/numbness was non-severe. The ALJ considered Plaintiff's headaches in connection with her cervical impairment, but the ALJ found that Plaintiff did not have a medically determinable primary headache impairment during the insured period. The ALJ also found that Plaintiff did not have a medically determinable mental impairment prior to the date last insured.[31]*

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the

---

[28] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[29] A.R. 18.

[30] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[31] A.R. 18–20.

equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[32]  *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[33]*

Residual Functional Capacity. Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[34]  Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[35]  *The ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following limitations:  she is limited to occasional climbing of ramps or stairs; never climbing ladders, ropes, or scaffolds; occasional balancing, stooping, and crawling; frequent kneeling and crouching; occasional reaching at and above shoulder level with the bilateral extremities; frequent handling and fingering with the left upper extremity; avoiding concentrated exposure to non-weather-related extreme cold, heat, humidity, industrial-level vibration, and hazards; and avoiding exposure to unprotected heights.[36]*

---

[32] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[33] A.R. 20.

[34] 20 C.F.R. § 416.945.

[35] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[36] A.R. 20–21.

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.[37] Otherwise, the evaluation process moves to the fifth and final step.[38] *The ALJ determined that Plaintiff was capable of performing her past relevant work as a project manager/project director (DOT #189.117-030, sedentary, SVP 8) and risk and insurance manager (DOT #186.117-066, sedentary, SVP 8).[39]*

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[40] *Although the ALJ determined that Plaintiff was capable of performing her past relevant work, she proceeded to step five. The ALJ found that Plaintiff would have been able to perform occupations such as office helper (DOT #239.567-010, light, SVP 2); pricer/price marker (DOT #209.587-034, light, SVP 2); and tanning salon attendant (DOT #359.567-014, light, SVP 2).[41]*

---

[37] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[38] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[39] A.R. 30–31.

[40] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[41] A.R. 32.

The ALJ concluded that Plaintiff was not disabled at any time from January 17, 2017, the alleged onset date, through December 31, 2018, the date last insured.[42]

## III. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was 45 years old on December 31, 2018, the date last insured.[43] At that time, she was considered "a younger individual" (age 18–49) by the Social Security Administration.[44] Plaintiff's claim was denied initially on April 13, 2020, and upon reconsideration on July 23, 2020.[45] On June 14, 2021, she appeared with representation and testified by video before ALJ Cecelia LaCara.[46] The ALJ issued an unfavorable hearing decision dated July 7, 2021.[47]

On March 21, 2022, the Appeals Council vacated the ALJ's decision and remanded for further proceedings. The Council concluded that "improper evidence was relied upon in formulating the decision and further evaluation of the medically determinable impairments is required." Specifically, the Council noted that the ALJ's determination that Plaintiff's headaches were not a severe impairment was based on evidence that did not relate to Plaintiff.[48]

---

[42] A.R. 33.

[43] A.R. 31, 382.

[44] *See* 20 C.F.R. §§ 404.1563, 416.963.

[45] A.R. 123, 140.

[46] A.R. 84–102. The ALJ noted that the hearing was being held by video "due to community measures to stop the spread of the virus COVID-19." A.R. 79.

[47] A.R. 144–54.

[48] A.R. 163.

On September 9, 2022, Plaintiff appeared with representation and testified again before ALJ LaCara by video.[49]  On October 11, 2022, the ALJ issued an unfavorable ruling.[50]  After the Appeals Council denied review on January 26, 2023, Plaintiff timely appealed to this Court.[51]

## IV.  DISCUSSION

Plaintiff is represented by counsel in this appeal.  Plaintiff alleges one basis for remand:  the ALJ failed to include all impairments supported by the record into the RFC.[52]  Specifically, Plaintiff asserts that the ALJ omitted limitations "related to Plaintiff's documented chronic headaches."[53]  The Commissioner disagrees and urges the Court to affirm.  Specifically, the Commissioner asserts that the ALJ "reasonably discounted" Plaintiff's symptom allegations involving her headaches.[54]

## A.    The ALJ's RFC

A claimant's RFC measures an "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent

---

[49] A.R. 50–68.

[50] A.R. 15–33.

[51] A.R. 1–5.  Plaintiff filed her complaint on March 22, 2023. *See* Docket 1.

[52] Docket 13 at 19–23.

[53] Docket 13 at 19.

[54] Docket 15 at 2.

work schedule."[55]  The ALJ must consider all relevant evidence in the record, including "medical records, lay evidence, and the 'effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"[56]  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."[57]

Here, the ALJ determined Plaintiff had the RFC to perform light work with a range of limitations.  The RFC included upper extremity limitations directly related to Plaintiff's "ongoing symptoms of pain, arm tingling, and neck symptoms with upward reaching activities."[58]  The RFC also included limitations for "ongoing pain and sensitivity" by limiting extreme temperatures and humidity, industrial-type vibrations, and hazardous conditions.[59]  However, the ALJ concluded that Plaintiff's headaches were not medically determinable as a "primary headache impairment" during the insured period.[60]  Instead,

_____

[55] SSR 96-8p, 1996 WL 374184, at *2.  *See Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1224 (9th Cir. 2009) ("SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless.").

[56] *Robbins. v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006); *see also* SSR 96-8p, 1996 WL 374184, at *5, *accord* C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

[57] *Bray,* 554 F.3d at 1228 (internal quotation and citation omitted).

[58] A.R. 27.

[59] A.R. 26.

[60] Headaches that "occur independently and are not caused by another medical condition," termed "primary headaches," are not a listed impairment. SSR 19-4p, 2019 WL 4169635, at *3, *7 (Aug. 26, 2019).  Rather, the agency has identified listing 11.02, for epilepsy, as the most closely analogous listed impairment for primary headache disorder and provides that, "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures)." SSR 19-4p, 2019 WL

the ALJ considered Plaintiff's headaches as a symptom of Plaintiff's cervical degenerative disc disease and osteoarthritis, status post cervical fusion.[61]

### 1.      Plaintiff's subjective symptom testimony and reports

While Plaintiff asserts that the ALJ failed to include Plaintiff's headache impairment in the RFC, she does not explicitly state in her opening brief that the ALJ erred in the evaluation of Plaintiff's symptom testimony.[62]   However, the Commissioner's brief and Plaintiff's reply brief discuss the ALJ's treatment of Plaintiff's symptom complaints.[63] Therefore, the Court addresses the ALJ's evaluation of Plaintiff's symptom testimony as follows:

Plaintiff testified with representation at two hearings before the ALJ.   At both hearings, Plaintiff testified that her pain was constant.[64]   At her first hearing, she testified that "it takes just one big pop, one big crack and I get . . . pain and headaches and numbing and tingling . . . ."[65]   At Plaintiff's second hearing, she testified that she "started getting headaches constantly" after her neck surgery in October 2016.[66]   She testified

---

4169635, at *7.   Plaintiff does not argue that she suffered from primary headaches.   *See* Docket 13.

[61] A.R. 18–19.

[62] Docket 13 at 19–23.

[63] *See* Dockets 15, 16.

[64] A.R. 51 ("100% full body pain 100% of the time"), 97 ("[T]he pain is 100% constant").

[65] A.R. 90.

[66] A.R. 51.

Case No. 3:23-cv-00064-JMK, *Kristin M.A. v. Kijakazi*
Decision and Order
Page 12 of 24

that in 2018, her headaches rose to a migraine level three times or more per week.[67] Plaintiff indicated that when she lifted her arms to chest level, it would trigger neck pain, made her headache worse, and caused pain in her shoulder blades.[68]

In March 2020, Plaintiff completed a headache questionnaire. She described her headaches as "mild," occurring "90–95% of the time," and mostly occurring on the left side. She reported that her headache increased and was accompanied by shooting pain when "triggered by a neck pop." She indicated that after a "flare up," her "significantly more painful" headaches could last from two hours to three days.[69]

In a function report, also from March 2020, Plaintiff reported that she had difficulties with pull-over sweatshirts on bad days, her sleep was adversely affected by pain and tingling, she prepared only cold or microwaved food, and tried to do housework daily, but she moved "slow and strategically." She stated that she struggled with all movements and her ability to hear was affected by "headache/facenumbing."[70]

### 2. Legal standards

An ALJ's assessment of a claimant's symptoms has two steps.[71] First, the ALJ determines whether the claimant has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

---

[67] A.R. 62.

[68] A.R. 54.

[69] A.R. 523.

[70] A.R. 532–39.

[71] *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017), *superseded on other grounds by* §404.1502(a).

symptoms alleged."[72]  In the first step, the claimant need not "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."[73]

Second, if the claimant has satisfied step one and the ALJ has determined that the claimant is not malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of the claimant's symptoms. This standard is "the most demanding required in Social Security cases."[74]  Yet, this does not mean an ALJ is required to "simply accept a claimant's subjective symptom testimony notwithstanding inconsistencies between that testimony and the other objective medical evidence in the record, allowing a claimant's subjective evidence to effectively trump all other evidence in a case."[75]

In this case, the ALJ determined that Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms that Plaintiff described.  The ALJ then found that Plaintiff's statements concerning the intensity, persistence, and limiting effects

---

[72] *Id.* (quoting *Garrison v. Colvin,* 759 F.3d 995, 1014–15 (9th Cir. 2014)).

[73] *Garrison,* 759 F.3d at 1014–15 (internal citations and quotations omitted).

[74] *Trevizo,* 871 F.3d at 678.

[75] *Smartt v. Kijakazi,* 53 F. 4th 489, 499 (9th Cir. 2022).

of these symptoms were inconsistent with the medical evidence and other evidence in the record.[76]

Because the ALJ found Plaintiff's underlying impairments severe and cited no evidence of malingering, she was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom allegations. The ALJ provided the following reasons specifically relating to headaches: (1) the medical record showed improvement of headache symptoms; (2) medical provider Natasha Sherrill's opinion regarding the effects of headaches on Plaintiff's ability to work was not supported by objective signs or past findings; and (3) Plaintiff's activities suggest less limitation than Plaintiff alleges.[77]

### 3. Improvement with treatment

"[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."[78] At the same time, symptom improvement must be evaluated in the context of the "overall diagnostic picture."[79] In this case, the ALJ acknowledged that medical records after November 2017 showed Plaintiff "did continue to report [a] temporary increase in symptoms including headaches . . .," but the ALJ concluded that subsequent medical records showed Plaintiff's symptoms improved. The ALJ also noted that Plaintiff "wanted to continue physical therapy, massage therapy, chiropractic care, as

---

[76] A.R. 23.

[77] A.R. 23–30.

[78] *Wellington v. Berryhill,* 878 F.3d 867, 876 (9th Cir. 2017).

[79] *Holohan v. Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001).

Case No. 3:23-cv-00064-JMK, *Kristin M.A. v. Kijakazi*
Decision and Order
Page 15 of 24

well as work a reduced schedule, instead of using prescribed medications, and she continued to show improvement."[80]  Specifically, the ALJ pointed to medical records from November 17 through approximately October 2018, in which Plaintiff generally reported a slow improvement of symptoms, a reduction in medications, and a toleration for increased activities, including working 15 to 20 hours per week.  The ALJ also noted objective physical findings during the same period that were inconsistent with Plaintiff's symptom complaints and reports of adequate management of pain with medication.[81]

During the disability period, between January 17, 2017 and December 31, 2018, Plaintiff reported infrequent headaches, ranging from slight to moderate, to her providers.[82]  Moreover, her subjective reports to medical providers of slow improvement during that same time period contradict Plaintiff's hearing testimony that she experienced "constant headaches" and "100% full body pain 100% of the time" after her October 2016 neck surgery.[83]  And, although Plaintiff's headache symptoms appear to have worsened after the relevant disability period, they were still primarily treated in connection with flares

---

[80] A.R. 24.

[81] A.R. 24–25.

[82] *E.g.,* A.R. 1167 (1/16/17 slight infrequent), 2251 (3/20/18 slight infrequent), 2258 (5/31/18 moderate infrequent), 2262 (8/8/18 moderate infrequent), 2316 (9/11/18 moderate), 2359 (5/31/18 moderate infrequent), 2383 (3/20/18 slight infrequent), 2437 (11/27/17 headache all week), 2446 (11/16/17 slight infrequent).  The Court notes that the administrative record contains multiple duplicates of certain medical records.  To the extent possible, the Court cites to the first medical record in the administrative record submitted to the Court.

[83] A.R. 51; *e.g.,* A.R. 1098–99 ("I am slowly improving every week, and I'm hit-or-miss on a daily basis), 2110, 2129, 2131, 2132, 2138, 2141, 2144, 2147, 2256 (reported improvement after massage therapy).

in her cervical pain[84] and were reportedly managed with medication.[85]  Only years later

were Plaintiff's headaches diagnosed as migraines.[86]

Because "[t]he standard isn't whether [the] court is convinced, but instead whether

the ALJ's rationale is clear enough that it has the power to convince," the ALJ's examples

of Plaintiff's general improvement in headache symptoms provided a sufficiently specific,

clear, and convincing reason for discounting Plaintiff's subjective complaints regarding

her headaches during the relevant disability period.[87]

---

[84] *See e.g.,* A.R. 2228 (2/5/20 reported flare of cervical pain with headache and radiating left arm pain), 2232 (2/12/20 reported flare of cervical pain with headache and radiating left arm pain), 2235 (2/19/20 reported flare of cervical pain with headache and radiating left arm pain), 2238 (2/26/20 reported flare of cervical pain with headache and radiating left arm pain), 2240 (3/4/20 reported flare of cervical pain with headache and radiating left arm pain), 2451 (9/6/19), 2453 (9/18/19 Dr. Scott-Calor, D.O. noted "as her neck pain intermittently radiates up into her head causing headaches with associated symptoms I do suggest that she may also benefit from C2–3 medial branch blocks with potentially subsequent radiofrequency ablation to address the upper cervical pain and headache pain."), 2457 (3/30/21), 2480 (Dr. Hansen noted Plaintiff's reports of left face numbness and headaches after attempting 20 hours of work "in recent weeks"), 2597 (headaches and left arm pain with cervical flare up), 2608 (3/11/20 reported headache with cervical flare up), 2640 (4/9/21), 2643 (3/30/21), 2692–93 (5/5/21 mild left-sided), 2702 (6/2/21 constant headache), 2731 (10/7/21 headache following "pop" sensation in neck), 2743 (10/21/21 severe infrequent headaches), 2783 (3/10/22), 2794 (3/24/22), 2796 (3/14/22), 2828 (5/18/22 daily headaches), 2834 (4/6/22), 2842–44 (3/21/22), 2846–47 (3/7/22), 2851–54 (2/15/22), 2856–60 (2/1/22), 2911 (8/30/22 APRN Sherrill letter re cervicogenic headaches).  The Court notes that certain page numbers in the administrative record were obscured in the copying process.  The Court attempted to count page numbers, but there may be unavoidable inaccuracies.

[85] *See e.g.,* A.R. 2832, 2844, 2849, 2854.

[86] *See e.g.,* A.R. 2773 (2/8/22 Sumatriptan for migraine), 2779 (3/24/22 prescribed Sumatriptan for migraine headaches), 2781 (3/17/22 Sumatriptan), 2784 (3/10/22 Sumatriptan), 2834 (4/6/22 Sumatriptan)2862–66 (1/5/22 significant headache for two days with diagnosis intractable migraine without auro and without status migrainosus), 2869 (11/23/21 with diagnosis intractable migraine without auro and without status migrainosus), 2876 (11/9/21 mild leftsided headache), 2903 (6/28/22 headache comes from her neck), 2914–16 (8/30/22 APRN Sherrill headache questionnaire from counsel for Plaintiff).

[87] *Smartt,* 53 F.4th at 499–500.

### 4. Medical opinion of Natasha Sherrill, APRN

Plaintiff alleges that APRN Sherrill's opinion demonstrates that Plaintiff's headaches did not improve, but instead, she "continued to have severe headaches on a regular basis" without relief from medication.[88]  Because Plaintiff filed her DIB application on or about July 26, 2019, the new regulations are used to evaluate her medical source opinions.

#### a.   *Legal Standard*

Under these new regulations, the definition of what constitutes a medical opinion has been narrowed, focusing on what the claimant can do despite her impairments and what work-related limitations are present.[89]  The new regulations define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> (i)    Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii)    Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii)    Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

---

[88] Docket 13 at 22.

[89] *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1513(a)(2).

Case No. 3:23-cv-00064-JMK, *Kristin M.A. v. Kijakazi*
Decision and Order
Page 18 of 24

(iv)    Your ability to adapt to environmental conditions, such as temperature or fumes.[90]

The new regulations further provide that the ALJ no longer gives any particular weight to a medical opinion based on its source, thereby eliminating the treating source rule.[91]  Instead, the ALJ considers the persuasiveness of a medical opinion based on five factors:  (1) supportability; (2) consistency; (3) relationship with the claimant, including length, extent, and type of treatment; (4) specialization; and (5) other relevant factors that support or contradict the medical opinion.[92]

Supportability and consistency are considered the most important factors for evaluating persuasiveness.[93]  Supportability and consistency are explained as follows in the regulations:

(v)    Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(vi)    Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[94]

---

[90] 20 C.F.R. § 404.1513(a)(2).

[91] *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844-01 (Jan. 18, 2017), 2017 WL 168819, at *5867–68; 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (for claims filed on or after March 27, 2017).

[92] 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

[93] The regulations state, "The factors of supportability . . . and consistency . . . are the most important factors [the SSA] consider[s] when [the SSA] determine[s] how persuasive [the SSA] find[s] a medical source's medical opinions or prior administrative medical findings to be." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (for claims filed on or after March 27, 2017).

[94] 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).

Generally, these are the only two factors the ALJ is required to address in her decision.[95] However, when two or more medical opinions or prior administrative medical findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how "the other most persuasive factors" were considered.[96]  In the Ninth Circuit, the new regulatory framework no longer requires ALJs to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining medical source's opinion.[97]

        *b.*    *The ALJ's Evaluation*

Here, the ALJ discounted the medical source opinion, work restrictions questionnaire, and headache questionnaire completed by Natasha Sherrill, APRN.[98]  In her opinion letter of August 30, 2022, APRN Sherrill stated that she had treated Plaintiff since May 2, 2019.  She noted Plaintiff's reports of constant headaches and "worsening migraines with facial paralysis."  APRN Sherrill stated that she had prescribed medication, referred Plaintiff to specialists, and ordered additional imaging, but Plaintiff's symptoms had not significantly improved.  She opined that Plaintiff's chronic conditions would not improve and that Plaintiff would not be able to return to work in any capacity.[99]

---

[95] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

[96] 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (for claims filed on or after March 27, 2017).

[97] *Woods v. Kijakazi,* 32 F.4th 785 (9th Cir. 2022).

[98] A.R. 2911–16.

[99] A.R. 2911.

Case No. 3:23-cv-00064-JMK, *Kristin M.A. v. Kijakazi*
Decision and Order
Page 20 of 24

The ALJ found APRN Sherrill's overhead and shoulder level reaching opinions consistent with and supported by Plaintiff's reported symptoms and the record. However, the ALJ found that APRN Sherrill's exertion limitation, work hours limitation, and absenteeism opinions were unsupported and inconsistent for the following stated reasons: (1) APRN Sherrill rendered her opinion more than three years after Plaintiff's date last insured; (2) APRN Sherrill did not "provide objective signs or past findings to support limitations such as [the] inability to sit, stand, or walk through an eight-hour day, [the] need for perpetual leg elevation, or [Plaintiff's] inability to lift or carry *any* weight during the relevant period or beyond;" and (3) APRN Sherrill's limitations are attributed to Plaintiff's subjective reports of pain. The ALJ concluded that the medical and other evidence was not consistent with APRN Sherrill's more severe limitations regarding Plaintiff's ability to work during the period at issue.[100]

The medical record does not support APRN Sherrill's opinion that Plaintiff's headaches were debilitating during the disability period.[101] As noted above, Plaintiff's headache complaints were primarily symptoms associated with her severe cervical impairment, which the ALJ addressed at steps two and four of the sequential evaluation. Moreover, the records show that Plaintiff's migraine headaches, diagnosed after the disability period, were reportedly controlled with Sumatriptan.[102]

---

[100] A.R. 28.

[101] A.R. 2916.

[102] *See, supra,* n.84–85; *Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Sumatriptan is used to treat migraines. *See* https://www.webmd.com/drugs/2/drug-7741/sumatriptan-oral/details.

In sum, the ALJ's discounting of APRN Sherrill's opinion regarding the effects of headaches on Plaintiff's ability to work was a sufficiently specific, clear, and convincing reason for discounting Plaintiff's symptom complaints.

### 5. Plaintiff's daily activities

The ALJ also discounted Plaintiff's symptom testimony based on her activities. As examples, the ALJ specifically mentioned Plaintiff working on part-time contracts, walking regularly, and working up to some jogging. The ALJ also noted that Plaintiff's reported dog-walking and household activities showed Plaintiff was less limited than she claimed to be.[103]

An ALJ may discount a claimant's credibility when daily activities demonstrate an inconsistency between what the claimant can do and the degree of disability alleged.[104] Daily activities are "grounds for an adverse credibility finding if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."[105] Here, the ALJ cited to instances in the record showing Plaintiff engaging in activities that were not consistent with the severity of the symptoms she alleged.[106] Moreover, examining physician Jared Kirkham,

---

[103] A.R. 30.

[104] *Burrell v. Colvin,* 775 F.3d 1133, 1137–38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination").

[105] *Ghanim v. Colvin,* 763 F.3d 1154, 1165 (9th Cir. 2014).

[106] A.R. 30; 1627, 1736, 1828–29. *See Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993) ("If the ALJ wished to reject Dodrill's pain testimony, he was required to point to specific facts in the record which demonstrate that Dodrill is in less pain than she claims").

M.D., recommended that Plaintiff return to regular exercise and to work to alleviate her chronic pain.[107]

Plaintiff's daily activities appear to be more than minimal and could be transferable to a work setting.[108]  However, even if the ALJ failed to provide a clear and convincing reason supported by substantial evidence for rejecting Plaintiff's subjective testimony regarding her activities of daily living, the ALJ provided other sufficiently specific, clear and convincing reasons, as set forth above.[109]

We are confined to reviewing the reasons the ALJ asserts.[110]  In this case, the ALJ provided several clear and convincing reasons supported by substantial evidence for discrediting Plaintiff's testimony and properly linked the specific evidence to the testimony she discredited.  In sum, the ALJ did not err by discounting Plaintiff's subjective symptom complaints regarding her headaches during the period between January 17, 2017, and December 31, 2018.

---

[107] A.R. 1745.

[108] *See Ghanim,* 763 F.3d at 1165; *Gallant,* 753 F.2d at 1453 (ordering award of benefits for leg and back pain despite claimant's daily activities of cooking meals and washing dishes).

[109] *Lapuzz v. Berryhill,* 740 Fed. Appx. 596, 597 (9th Cir. 2018) ("Any error in relying on additional reasons was harmless because the ALJ properly provided several clear and convincing reasons to discredit [Plaintiff]'s testimony.")  A court or litigant may cite to unpublished Ninth Circuit opinions issued on or after January 1, 2007.  U.S. Ct. App. 9th Cir. R. 36-3(b); Fed. R. App. P. 32.1(a).  *See also Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008).

[110] *Brown-Hunter,* 806 F.3d at 494 ("As we have long held, we are constrained to review the reasons the ALJ asserts.") (quotations, citations, and emphasis omitted).

## B. Vocational Expert Hypothetical

"[I]n hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence."[111]  Here, the ALJ found that Plaintiff's cervical degenerative disc disease and osteoarthritis, status post cervical fusion were severe impairments.  The ALJ then analyzed Plaintiff's headaches as a pain symptom associated with the cervical impairment, but the ALJ found there was "no indication of treatment for a primary headache disorder or migraines during [the disability period.]"[112] Because the RFC included all of Plaintiff's limitations supported by substantial evidence, including headaches as a symptom of her cervical impairment, the hypotheticals posed to the vocational expert were legally adequate.

## V.  ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are free from legal error and supported by substantial evidence. Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 13 is DENIED and the Commissioner's final decision is AFFIRMED.

DATED this 2nd day of January, 2024, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
UNITED STATES DISTRICT JUDGE

---

[111] *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 886 (9th Cir. 2006).

[112] A.R. 18.